**AT & T INFORMATION SYSTEMS, INC., Respondent,**

v.

**Frank E. WALLEMANN, Defendant,**

**Saundra Renee Durr, Appellant.**

**No. WD 45147.**

Missouri Court of Appeals, Western District.

March 31, 1992.

Ransom A. Ellis, III, Todd A. Johnson, and Lester J. Boyle, 3d, Ellis, Ellis & Black, Springfield, for appellant.

Louis F. Bonacorsi, Ketrina G. Bakewell, Coburn, Croft & Putzell St. Louis, for respondent AT & T.

William L. Webster, Atty. Gen., Robert L. Franson, Jerry Buxton, Asst. Attys. Gen., Jefferson City, for respondent Frank E. Walleman.

Before LOWENSTEIN, C.J., and SHANGLER and SMART, JJ.

SHANGLER, Judge.

This appeal is from a permanent order of prohibition entered by the circuit court in favor of relator AT & T Information Systems Inc. that directed Chief Hearing Officer Wallemann for the Commission on Human Rights to refrain from "denying or refusing in any respect" certain motions of the relator to compel discovery.[1] The motions were brought in a proceeding before the Commission on the complaint of Saundra Renee Durr, a quadriplegic. Durr asserts that her employer, AT & T, discriminated against her on the basis of her physical handicap by removing her from a position of sales associate at a phone store and by placing her on involuntary disability leave. §§ 213.010 and 213.055.[2] The complainant Durr seeks damages as well as reinstatement to the sales associate position. AT & T denies discrimination and contends, rather, that complainant Durr is physically unable to perform the function of sales associate and cannot be reasonably accommodated to do so.

It is evident that one gist of the dispute before the Commission is the physical ability of employee Durr to perform the work of a sales associate.

In response to written interrogatories by AT & T, Durr designated Julie Markway Reinkemeyer, occupational therapist, as an expert witness she expected to call at the hearing before the Commission. Thereafter, counsel for Durr agreed to present her for deposition as well as for physical examinations by an occupational therapist and then by a physician. Counsel came to doubt that any physical examination was authorized by law in proceedings before the Commission on Human Rights, and withdrew consent to present Durr for the evaluation by an occupational therapist. AT & T then brought in the administrative proceeding a motion to compel discovery for a physical examination of the complainant by an occupational therapist. Chief Examiner Wallemann denied the motion, and AT & T brought a petition for writ of prohibition in the circuit court to correct that "usurpation of authority."

Counsel for Durr then came to conclude that in such proceedings the law did not provide for any discovery of the physical condition of the complainant, whether by an occupational therapist or a physician, and withdrew consent for the examination by a physician. AT & T brought a motion to compel an examination by a physician. That motion was also denied. AT & T brought a successive petition for writ of prohibition to direct Chief Hearing Examiner Wallemann to grant the motion of AT & T to compel complainant to submit to an examination by a physician on behalf of AT & T.

The circuit court granted preliminary orders of prohibition on each petition and in a consolidated permanent order directed Chief Hearing Examiner Wallemann to

---

1. The petitions allege that refusal by Chief Examiner Walleman to grant the motions for discovery constitutes a "usurpation of judicial power" that the writ of prohibition will remedy. The office of prohibition, however, is preventive and not coercive. It is mandamus that compels a particular person to do a particular act. Mandamus was the proper remedy. *See* 2 *Missouri Appellate Practice and Extraordinary Remedies,* §§ 12.3 *et seq.* and 13.1 *et seq.; see also State ex rel. Noranda Aluminum, Inc. v. Rains,* 706 S.W.2d 861, 862[1] (Mo. banc 1986). We exercise our prerogative to give review nevertheless as a matter of judicial economy. *Enke v. Anderson,* 733 S.W.2d 462, 466[3] (Mo.App. 1987).

2. Unless otherwise noted, all statutory references are to RSMo 1986.

## 220

compel complainant Durr to submit herself to examinations by a physician and by an occupational therapist. Our review is of the order of permanent prohibition.

The issue on this appeal is whether the Commission on Human Rights may compel the physical examination of a person who complains of employer discrimination because of a handicap.

The orders of the Chief Hearing Examiner for the Commission on Human Rights denying the AT & T motions to compel the physical examination of Durr by either an occupational therapist or by a physician rested on these express conclusions of law:

> Section (1) of 8 CSR 60–2.100 of the Procedural Regulations of the Commission ... states:
>
> (1) General Provisions Governing Discovery. The presiding officer shall follow the procedural rules as set out in these rules as well as the Missouri Rules of Civil Procedure, and Chapters 213 and 536, RSMo. Chapter 213 RSMo does not specifically include Order for Examination as a form of pretrial discovery allowed under the Act. Although Chapter 536 RSMo allows enforcement of a physical or mental examination order, it is only with respect to Chapter 631 [sic] RSMo, which is not involved herein.
>
> Rule 60 of the Rule [sic] of Civil Procedure provides for Order for Examinations in certain situations.
>
> After reading all relevant statutes, Procedural Regulations and Rules of Civil Procedure, I find that I do not have authority to order the Complainant–Intervenor [Durr] to be examined by an occupational therapist [or by a physician].

It is the premise of the conclusions of law that in the absence of a specific provision of statute Human Rights Chapter 213 or Chapter 536 for a physical examination of an employee who complains of discrimination due to physical handicap, the Commission on Human Rights is without power to order, and then to compel, the event. It is also implicit in that rationale that, to the extent that the discovery procedures of the Rules of Civil Procedure are integrated by Chapter 536 into a contested case before an agency, they empower the Commission on Human Rights. Human Rights Chapter 213, indeed, does provide that in a contested case before the Commission, a party has access to written interrogatories, requests for production of documents, and for admissions, in the same manner as conducted in civil actions in the circuit court. § 213.075.6. Indeed, also, Chapter 536 empowers a party in a contested case before an agency with additional discovery by deposition. § 536.073.1 RSMo Cum.Supp.1991.[3] *See also* § 213.075.5. Neither statute, however, provides for the physical or mental examination of a party or for the enforcement of such an order.[4] It is by this train of reasons that the Chief Hearing Examiner concluded that, although the physical ability of complainant Durr to perform the work was "one of the issues which must be decided" and was "within the requirements for issuance of an Order of Examination under [Physical and Mental Examination of Persons] Rule 60," the Commission was without authority to order the physical examination.

The order of prohibition effectively adjudges that a party to a contested complaint of discrimination due to physical handicap may require and compel the physical examination of the complainant in a proceeding before the Human Rights Com-

**3.** Prehearing Discovery Regulation 8 CSR 60–2.100 of the Procedural Regulations of the Commission on Human Rights, to which the conclusions of law of the Chief Hearing Examiner advert, is merely a recapitulation of the means of discovery § 213.075.6 and § 536.073.1 RSMo Cum.Supp.1991 already allow a party. The power to give and enforce discovery by physical or mental examination is not a method within these legislative grants.

**4.** It is only in adjudications of the Administrative Hearing Commission that Chapter 536 grants to a party the full range of discovery that is provided by supreme court rule for civil actions. Furthermore, enforcement of discovery is on the same terms as under the rules of civil procedure, except that an order to require a physical or mental examination is enforceable only by the circuit court. Section 536.073.2(1) RSMo Cum.Supp.1991.

mission under Chapter 213. The order of prohibition, however, does not explain the ground of judgment. AT & T surmises that by the judgment the circuit court determined that "Chapter 213 and the regulations pertaining to that chapter fully incorporate the Missouri Rules of Civil Procedure, including Rule 60.01 which provides for physical examination." AT & T argues also that the provisions of Chapter 536, incorporated by reference into the procedures before the Human Rights Commission by 8 CSR 60–2.100, that grant a party reasonable opportunity to prepare, present and rebut evidence on an issue, endow the right to compel the physical examination of a complainant of handicap discrimination.

AT & T contends, lastly, that to allow complainant Durr to present evidence of her continued physical aptitude for the employment by the occupational therapist expert, but deny the employer resort to a like expert, is to deny the adversary opportunity to rebut and to prepare evidence on that critical issue. The order of prohibition, AT & T concludes, redresses that failure of due process of law.

The adjudication of prohibition cannot be sustained on any of those grounds.

■ An order for physical examination under Rule 60.01 is a mode of discovery unavailable to a party in a proceeding before the Human Rights Commission under Chapter 213. The argument that the Rules of Civil Procedure, including Rule 60.01, are integrated into Chapter 213 through Section 1 of 8 CSR 60.2–100 and that "nothing contained in either Chapters 213 or 536" limits the rules available to a party before the Commission is disingenuous.

■ Chapter 213 expressly defines the discovery available to a party in a contested case before the Commission, and confines the modes to written interrogatories, requests for production of documents, and requests for admissions "in the same manner" as provided for "in civil actions in the circuit court." § 213.075.6. An order for physical examination under Rule 60.01, although also "provided for in civil actions in the circuit court," is not among the modes of discovery the statute sanctions in an

administrative case before the Commission. In addition, Chapter 536, to which subsection 6 of § 213.075 as well as Section 1 of 8 CSR 60–2.100 refer, sanctions the use of depositions in any contested case before an agency. § 536.073.1 RSMo Cum.Supp. 1991. It is only in the Administrative Hearing Commission, however, that a party may obtain *all* the discovery—including the use of a physical examination under Rule 60.01—provided for by supreme court rule in civil actions in the circuit court. § 536.-073.2(1) RSMo Cum.Supp.1991; *Board of Registration for Healing Arts v. Spinden*, 798 S.W.2d 472, 474[1] (Mo.App.1990).

■ A special statute that defines procedure in a specific type of proceeding controls over the general rules of civil procedure. *In re T.P.S.*, 595 S.W.2d 320, 322[5–7] (Mo.App.1980). The Rules of Civil Procedure, Rules 41 through 101, by their terms do not apply to proceedings in administrative agencies. *Macchi v. Whaley*, 586 S.W.2d 70, 74[6] (Mo.App.1979). They may be made to apply by statute. *See e.g.*, § 536.073.2(2) RSMo Cum.Supp.1991. An administrative agency has no more authority than is granted by statute. *Brooks v. Pool–Leffler*, 636 S.W.2d 113, 119[9–12] (Mo.App.1982). It has no inherent power to give discovery, but only as authorized by statute. *National Advertising Co. v. State Highway Comm'n*, 549 S.W.2d 536, 541[6, 7] (Mo.App.1977). That power may be express or implied, but must be necessary from the language of the enactment. *Brooks v. Pool–Leffler*, 636 S.W.2d at 119[9–12].

■ The provisions for discovery in a contested case before the Human Rights Commission are found in § 213.075.6 and § 536.073.1. They do not include an order for physical examination, either by an occupational therapist or a physician. Therefore, in such proceedings that right does not exist as a matter of discovery. *Macchi v. Whaley*, 586 S.W.2d at 75; *Bland v. Trenton*, 618 S.W.2d 438, 443 (Mo.App. 1981). It is to be indifferent to plain language and basic principle to argue, as does AT & T, that the scope of Section 1 of the

regulations relating to Chapter 213 fully incorporates all discovery processes under the Rules of Civil Procedure, including an order of examination under Rule 60.01. The promulgation of regulations by an agency is the exercise of an authority delegated by law. *Brooks v. Pool–Leffler*, 636 S.W.2d at 118. Thus, it is a statute that invests a regulation and not a regulation that invests a statute. *See* 20 A. Neely & D. Shinn, *Missouri Practice: Administrative Practice and Procedure*, § 6.01 (1986); *Bresler v. Tietjen*, 424 S.W.2d 65, 70[4–6] (Mo. banc 1968).

Moreover, the plain language of Section 1 of 8 CSR 60–2.100 cannot be misunderstood. Its advisory that "[t]he presiding officer shall follow the procedural rules [of prehearing discovery] ... as well as the Missouri Rules of Civil Procedure and chapters 213 and 536, RSMo" relates directly to the rules for depositions and the use of interrogatories, admissions, requests to produce and subpoenas, which follow in sequence. It merely confirms that, although promulgated under the authority of § 213.030 and in the scope of § 213.075, the manner and conditions of their use are governed by Chapter 536 and the rules of civil procedure. *See* §§ 536.073.1, RSMo Cum.Supp.1991, 536.077, Rules 56, 57, 58.-01(a)(1) and 59. Neither the discovery of the physical condition of a party nor the procedure under Rule 60.01 to order such discovery is implicated by this regulation or these statutes.

■ The kindred argument, that Section 1 of 8 CSR 60–2.100 not only integrates the Rules of Civil Procedure into Chapter 213, but the whole of Chapter 536 as well, is even more errant. The insinuation of Chapter 536 into that regulation is to confirm one statutory source for prehearing discovery by deposition in contested cases in the Commission on Human Rights. *See* § 536.073.1 RSMo Cum.Supp.1991; § 213.-075.5. It strains language and principle to argue, as does AT & T, that § 536.063(3), which accords to a party reasonable opportunity to prepare and present evidence on any issue raised, and § 536.070(2), which vouchsafes to a party the right to rebut

evidence, intend the statutory authority to order discovery by physical examination in a claim of employment discrimination due to handicap under chapter 213. The declared purpose of regulation 8 CSR 60–2.100, as well as Section 1, is to describe the procedures and scope of prehearing discovery in the Commission on Human Rights. Section 536.063(2) relates to pleadings and § 536.070(2) to procedure at the hearing, but not to discovery. The flaw in the argument, as we note, is more fundamental. The source of rulemaking authority is a legislative grant by way of statute. The authority to validate a physical examination that AT & T ascribes to the regulation is self-conferred. As such, it can only be pretension. A. Neely and D. Shinn, *supra*, § 6.01.

AT & T argues that the regulations, statutes and rules of civil procedure aside, the order in prohibition is validated by considerations of fundamental fairness. The examinations compelled by the order in prohibition, AT & T argues, redress the unfairness of procedures that deny opportunity to a party confronted with a claim of employment discrimination due to physical handicap to rebut the testimony of an occupational therapist designated as an expert by the complainant to testify concerning her medical and physical condition. There is no doubt that "the physical ability of the complainant to perform the work is one of the issues to be decided," as the orders of Chief Examiner Wallemann that denied the motions to compel discovery acknowledge. There is doubt, the record considered, that any disadvantage that may result to AT & T by the want of authority to compel Durr to submit to a physical examination under Chapters 213 and 536 is fundamentally unfair or otherwise unconscionable.

■ The occupational therapist that complainant Durr intended to call at the hearing is Julie Markway Reinkemeyer. Her services were not solicited by Durr. Reinkemeyer performed an evaluation of Durr at the phone center store in April of 1984. It is not conclusive from the numerous transcript excerpts and other contents of the record on appeal as to who engaged

her to perform that service. The arrangement for that evaluation was made through Reinkemeyer's supervisor at the hospital where she worked by either a representative of AT & T or by an employee of the Missouri Division of Vocational Rehabilitation, but not by Durr.[5] The purpose of a procedure that provides for physical examination in proceedings that involve the physical condition of a party is to eliminate uncertainty concerning the medical aspects of the case and to permit the preparation of an informed defense. *State ex rel. McCloud v. Seier,* 567 S.W.2d 127, 128 (Mo. banc 1978). The objective is to do the litigants equal justice. *Id.* If the examination and evaluation by occupational therapist Reinkemeyer was at the instance of AT & T, which is at least an equal inference, then the complaint is essentially of the results of that examination, and not of denial of opportunity to prepare an informed defense.

The order of prohibition to compel complainant Durr to submit to examinations by an occupational therapist and physician nevertheless must be sustained, notwithstanding that *such a mode of discovery* in such a proceeding is sanctioned neither by statute, nor the rules of civil procedure, nor in the circumstances by the qualms of due process. The authority for such order as a grant of administrative power inheres in the overriding and remedial purpose that Human Rights Chapter 213 addresses. The chapter creates a Commission on Human Rights with the mandate

> ... to encourage fair treatment for and to foster mutual understanding and respect among, and to discourage discrimination against, any racial, ethnic, religious or other group protected by this chapter, members of these groups or handicapped persons. § 213.020.1–.2.

The chapter then invests powers and imposes duties upon the Commission to accomplish the statutory mandate:

(1) To seek to eliminate and prevent discrimination because of race, color, religion, national origin, ancestry, sex, age as it relates to employment, or handicap by all persons, and to take other actions against discrimination because of race, color, religion, national origin, ancestry, sex, age or handicap as provided by law; *and the commission is hereby given general jurisdiction and power for such purposes;*

(2) To implement the purposes of this chapter first by conference, conciliation and persuasion *so that persons may be guaranteed their civil rights* and goodwill be fostered;

(3) *To formulate policies to implement the purposes of this chapter* and to make recommendations to agencies and officers of the state and political subdivisions in aid of such policies and purposes;

. . . . .

(6) To adopt, promulgate, amend, and rescind suitable rules and regulations to carry out the provisions of this chapter and the policies and practices of the commission in connection therewith;

. . . . .

§ 213.030 [emphasis added]

▮▮▮ The fundamental role of a court in the construction of a statute is to give effect to the purpose of its enactment and the evident legislative intent. In that enterprise, account should be taken of "the policy adopted by the Legislature in reference to the subject-matter, the object of the statute, and the mischief it strikes at or seeks to prevent, as well as the remedy provided." *State ex rel. Lentine v. State Bd. Health,* 334 Mo. 220, 65 S.W.2d 943, 950 (1933). The legislature is deemed to have intended what the enactment states directly. *Metro Auto Auction v. Director of Revenue,* 707 S.W.2d 397, 402[8] (Mo. banc 1986). Where the statute is not explicit nevertheless, but confers powers and duties in general terms, there may be re-

---

**5.** It is clear that AT & T did request McElwee, Director of the Division of Vocational Rehabilitation, for an evaluation of Durr at the phone center store during her employment there. McElwee, in turn, requested the participation of Claudia Engman of the Missouri Department of Disability Determination for her recommendation as to accessibility at the workplace. Engman issued a report to AT & T on May 18, 1984.

sort to the necessary implications and intendments of the language to determine legislative intent. *State ex rel. McKittrick v. Wymore,* 345 Mo. 169, 132 S.W.2d 979, 987–88[17–19] (banc 1939). An implied power within this meaning is a power necessary for the efficient exercise of the power expressly conferred. In that sense, that which is implied in a statute is as much a part of it as that which is expressed. *State ex rel. Ferguson v. Donnell,* 349 Mo. 975, 163 S.W.2d 940, 943[1] (banc 1942).

The rule that extends a statute by necessary implication has been given frequent application in the construction of laws delegating powers to public officers and administrative agencies. *See State ex rel. Lentine v. State Bd. of Health,* 334 Mo. 220, 65 S.W.2d 943; *State ex rel. McKittrick v. Wymore,* 345 Mo. 169, 132 S.W.2d 979; *Spitcaufsky v. Hatten,* 353 Mo. 94, 182 S.W.2d 86 (banc 1944) *overruled on other grounds by Director of Dept. of Revenue v. Parcels of Land Encumbered with Delinquent Tax Liens,* 555 S.W.2d 293, 297 (Mo. banc 1977). Thus, the powers and duties of a public officer or agency in addition to those expressly given by statute include "those lying fairly within its scope, those essential to the accomplishment of the main purpose for which the office was created, and those which, although incidental and collateral, serve to promote the accomplishment of the principal purposes." *State ex rel. McKittrick v. Wymore,* 132 S.W.2d at 987[17–19] (quotations omitted). Cognately, a statutory grant of power to an official or agency "carries with it, by implication, everything necessary to carry out the power or right and make it effectual and complete ..." *Id.* at 988 (quotations omitted).

The object of the powers and duties conferred upon the Human Rights Commission by Chapter 213 is to eliminate, prevent and take other actions against discrimination because of race, color, religion, national origin, sex, ancestry, age or handicap. § 213.030.(1). The Commission is granted "general jurisdiction and power" to implement those purposes and administer the human rights law. § 213.030.(1),

(2). The importance of the interests confided by a statute to an agency bears upon the breadth of powers implied as necessary to accomplish the remedial purposes of the enactment. *State ex rel. Lentine v. State Board of Health,* 334 Mo. 220, 65 S.W.2d at 950; 3 *Sutherland Stat Constr* § 65.03 (4th Ed). The guarantee of civil rights that § 213.030.(1) vouchsafes is a value that society covets. It is a transcendent public interest, therefore, that the Commission is given to administer.

It is unlawful under Human Rights Chapter 213 for an employer to fail to hire or to discharge or otherwise discriminate against any person because of race, color, religion, national origin, sex, ancestry, age or handicap. § 213.055. Chapter 213 also forbids discrimination in: housing practices, commercial real estate loans, selling or renting by real estate agencies and public accommodations. §§ 213.040, 213.045, 213.050 and 213.065. The prehearing as well as the hearing procedures before the Commission are the same, whether the complaint is of unemployment discrimination due to physical handicap or any other kind. §§ 213.030.(7), (8); 213.075; 8 CSR 60–2.015 *et seq.* There is no express procedure for a physical examination of a party before the Commission as a means of prehearing discovery, whether or not the complaint raises an issue of physical disability. Nor is there otherwise in the detail of the section on the powers and duties of the Commission the express authority to require a party who complains of employment discrimination due to physical handicap to submit to such an examination. Yet such an issue of discrimination is generally determined by whether or not a physical disability exists. *Umphries v. Jones,* 804 S.W.2d 38, 40[2] (Mo.App.1991).

The powers and duties of an agency include not only those expressly given by statute, but also, by implication, "everything necessary to carry out the power or right and make it effectual and complete." *State ex rel. McKittrick v. Wymore,* 345 Mo. 169, 132 S.W.2d at 988. Where the grant of power is clear, the detail for its exercise need be given only within practical

limits. The rest may be left to the administrative agency delegated the duty to accomplish the legislative purpose. *Spitcaufsky v. Hatten*, 353 Mo. 94, 182 S.W.2d at 109 *overruled on other grounds by Director of Dept. of Revenue v. Parcels of Land Encumbered with Delinquent Tax Liens*, 555 S.W.2d at 297; *Citizens for Rural Preservation, Inc. v. Robinett*, 648 S.W.2d 117, 128[17] (Mo.App.1982).

Chapter 213 delegates to the Human Rights Commission the power "[t]o seek to eliminate and prevent discrimination because of ... handicap." § 213.030(1). In order to carry out that power, it is necessary for the Commission to require a party to submit to an examination by a physician or other suitable examiner. Before the Commission can eliminate and prevent handicap discrimination it must be able to determine whether discrimination exists. It would make little sense for the legislature to grant the Commission the power to prevent and eliminate handicap discrimination and at the same time deny the Commission the means to determine whether discrimination exists. *State ex rel. Rhodes v. Crouch*, 621 S.W.2d 47, 49 (Mo. banc 1981). The power to order a party who complains of handicap discrimination to submit to examination is essential to the effective exercise of the powers expressly granted and is fairly implied from § 213.-030.[6]

The judgment in prohibition is affirmed.

All concur.

---

**6.** It does not disparage our determination that the power to require a physical examination of a party who complains of employment discrimination due to physical handicap inheres in the powers expressly conferred upon the Commission by § 213.030 when that power is otherwise withheld by § 213.075.6 as a mode of prehearing discovery in *all* complaints of discrimination before the Commission. The unfair treatment that may constitute a discrimination under Human Rights Chapter 213 is multiform. It may be based on race, color, religion, national origin, ancestry, sex, age or handicap. A provision for an order of examination by a physician as a procedure of prehearing discovery would be anomalous in virtually all complaints of discrimination, other than for handicap. It is reasonable to conclude that the legislature did not sanction all the methods of discovery that the rules of civil procedure permit in order to prevent discovery before the Commission from becoming the "engine of harassment," as often happens in civil cases, and to spare the agency from unnecessary involvement in nettlesome discovery disputes. 20 A. Neely & D. Shinn, *Missouri Practice: Administrative Practice & Procedure,* § 10.33 (1986).